**McMULLEN et, Plaintiff-Appellant, v. F. & R. LAZARUS & COMPANY et, Defendants-Appellees.**

Nos. 4640, 4641. Decided February 6, 1952.

## OPINION

By HORNBECK, PJ.

The appeals in these cases were submitted upon one record and they were tried as one case in the trial court. No. 4641 is an action for damages for personal injuries claimed to have been suffered by plaintiff, Stella McMullen, while a passenger in an escalator of defendants-appellees' store by reason of the alleged negligence of said defendants.

No. 4640 is an action of W. L. McMullen, husband of Stella McMullen, arising from the same accident for damages for loss of services.

The accident sued upon occurred on the 23rd of January, 1948, when plaintiff, Stella McMullen, and her mother, Catherine Sovill, were customers in appellants' store. They had boarded the escalator at the first floor and were moving to the second floor. The mother, for some unexplained reason, fell against her daughter and both were precipitated heads downward and carried from the place of the falls to the second floor where they were removed from the escalator. It was the claim of plaintiffs that while Stella McMullen, "plaintiff, was in said prone position, the defendants negligently and carelessly continued to operate said escalator and thereby rolled and bumped plaintiff a distance of approximately sixty feet to the level of the second floor of said department store."

Five specifications of negligence are set up in the petition but in this Court principal reliance for reversal of the judgment is based upon the claim that plaintiffs were entitled to go to the jury on this fifth specification:

"At the time of said injury defendants failed to have said escalator equipped with an emergency stop button or switch accessible to the public and conspicuously located at the top and bottom of each landing and marked 'Escalator Stop Button' or 'Escalator Stop Switch,' as required by law."

The basis of the fifth specification is a rule promulgated by the Industrial Commission substantially as set forth in the part of the petition quoted.

At the conclusion of plaintiff's case the trial judge sustained a motion of defendants to direct a verdict in their behalf. This action of the Court is the subject of the first three assignments of error. The fourth was the refusal to permit the Superintendent of defendants' store to testify

as upon cross-examination. The fifth is that[a] the Court erred in refusing plaintiffs "permission to re-open their case seconds after it was rested for the purpose of producing further evidence as to whether or not the escalator stop button was or was not conspicuously located," and the sixth is that the Court erred in declining to permit the jury to view the escalator and stop button, if accessible, in operation.

The only evidence in the record touching the question whether or not the escalator was equipped with automatic stop buttons, as required by the rule of the Commission, at the first and second landings of the escalator is in the testimony of plaintiff, Stella McMullen, who says that she did not see any stop button. If her evidence is probative as to the non-presence of a stop button, it could only be so as to such button at the first floor because the accident occurred on the escalator between the first and second floors. Manifestly, there could have been a stop button conspicuously located at the landing of the second floor which would not be within sight of passengers on the escalator moving upward between the first and second floors. Assuming that plaintiffs' testimony affords some support for the claim that there was no stop button conspicuously displayed at the landing of the first floor, such proof would afford insufficient basis for submission of the case to the jury because there is no proof that the absence of such stop button was a proximate cause of plaintiff's, Stella McMullen's, injuries.

In the most favorable view of the evidence for plaintiff the only place near the escalator where any employee of defendants' companies was located was at the second floor. If there was any negligence on the part of any such employee it cannot be referred to the absence of a stop button. If there were proof that no stop button was conspicuously displayed at the second floor it would not justify the inference that want of knowledge of the location of the stop button was the reason why an employee did not stop the escalator. To indulge in such inference would require first an inference that because the stop button was not seen by plaintiff it was not conspicuously displayed and because it was not seen, the employees of the store did not know it was there and that was the reason they did not press the button and stop the escalator. This would require inference upon inference which is not permissible under the case of **Sobolovitz v. Lubric Oil Co., 107 Oh St 204.**

There is no necessity to consider the probative effect of negative testimony or those cases wherein such testimony has been held to be probative where a witness was in a

situation where he was under obligation to look and did not do so, or was in position to hear a signal but did not hear it. These questions are not presented because there is no proof whatever on the material issue, viz., whether or not there was a conspicuous stop button at the landing on the second floor, the only place where it could have been effectively used to protect the plaintiff under the facts appearing.

We are satisfied that Judge King was correct in directing the verdict.

The fourth assignment is not well made. The Superintendent of defendants' companies was not shown to be an officer of the companies.

Upon the fifth assignment the bill of exceptions discloses that plaintiff, Stella McMullen, had rested her case, defendants then interposed their motion and the following appears:

"MR. FRERICKS: If the Court please, we would ask leave of the Court to reopen our case for one point of evidence.

THE COURT: What is that?

MR. FRERICKS: To put in evidence that the stop button was not and is not conspicuously located.

THE COURT: The motion is sustained. Call the jury."

Evidently, the Court was referring to the motion of the defendants to direct a verdict. Nothing more appears.

The right of a trial judge to open the case to permit the offering of further testimony is within his discretion. It is seldom and only under unusual circumstances resulting in manifest prejudice to the complaining party, that such action is reversed. No facts appear which would justify our conclusion that the Court improperly exercised its discretion in overruling the motion. To what extent the matter was argued or the nature of the testimony to be offered does not appear.

The sixth assignment is based upon the refusal of the Court to permit the jury to view the stop button and escalator in operation. This motion was made at the conclusion of the testimony and not at its beginning, the time when such motions customarily are filed. The view of the escalator, had it been granted, would not have been appropriate for the purpose assigned, namely, to determine whether or not there was a stop button and, if so, if it was conspicuously located. Such testimony would be proper only for the purposes of applying testimony on the subject adduced in the trial of the cause. However, upon any view of the action of the Court it does not appear that its discretion was abused in refusing to sustain the motion.

A careful reading of this record in its entirety is convincing that the plaintiffs did not present sufficient facts to require the Court to submit their cases to the jury under the test of **Hamden Lodge, No. 517, I. O. O. F. v. Ohio Fuel Gas Co., 127 Oh St 469.**

The judgment will be affirmed.

WISEMAN and MILLER, JJ, concur.